UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHANE WYNN, Individually And On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>- against -<br><br>NIKON, INC.,<br><br>Defendant. | Case No. 14-cv-06268<br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT

Plaintiff Shane Wynn (hereinafter "Plaintiff"), by Counsel, individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Nikon, Inc. (hereinafter "Nikon" or "Defendant").  In support thereof, Plaintiff alleges as follows:

## INTRODUCTION

1.      This is a civil action on behalf of Plaintiff and a Class consisting of individual citizens of the United States who purchased a Nikon D800 camera (hereinafter "D800"), which has a faulty and defective automatic focusing system (hereinafter "Auto Focus" or "AF").

2.      Defendant's deceptive marketing and failure to repair or replace the D800 and its automatic focusing system has resulted in damage to consumers, including Plaintiff and others similarly situated.

## PARTIES

3.      Plaintiff Shane Wynn is a citizen of Ohio, residing at 150 Conger Avenue, Akron,

Ohio, 44303, which lies in Summit County and is part of the Northern District of Ohio, U.S. District Court.

4.      Defendant Nikon, Inc. is a New York corporation having its principal place of business at 1300 Walt Whitman Road, Melville, New York 11747, which lies in Suffolk County. Defendant does business throughout the United States, and is responsible for the distribution, sale, servicing, and marketing of the D800.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) as the parties are citizens of different States, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship from Defendant; there are more than 100 Class members nationwide; and the aggregate amount in controversy exceeds $5,000,000.

6.      Defendant has conducted substantial and continuous business in the State of New York and has offices and agents in New York.  Thus, this Court has personal jurisdiction over Defendant.

7.      Defendant, as stated above, has its corporate headquarters located in Suffolk County, NY and is subject to personal jurisdiction in the Eastern District of New York, and a substantial part of the events or omissions giving rise to this claim occurred in the Eastern District of New York. Venue is therefore proper herein pursuant to 28 U.S.C. § 1391(a).

## CLASS ACTION ALLEGATIONS

8.      This action may be brought and properly maintained as a class action pursuant to the provisions of Fed. R. Civ. P. 23. Plaintiff brings this action on behalf of herself and a class of all others similarly situated.

9.      Plaintiff brings this class action on behalf of the following class:

**All residents of the United States who purchased a Nikon D800 camera not for resale.**

10.     Excluded from the class are Defendant, any of its parents, subsidiaries, or affiliates, any of Defendant's officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, all governmental entities, and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

11.     In accordance with Fed. R. Civ. P. 23(1), the Class is so numerous that joinder of all members is impracticable.  While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the class includes tens of thousands of members.

12.     In accordance with Fed. R. Civ. P. 23(2), there are questions of law and fact common to the Class and which predominate over any individual issues.  Common questions of law and fact include, without limitation:

a.      Whether Defendant owed a duty to the class members under the applicable statutes and law;

b.      Whether Defendant knew the Nikon D800 camera was defective when offered for sale to the public;

c.      Whether Defendant knew or should have known of defects in the D800 when

selling it to the public;

d.     Whether Defendant mislead consumers and concealed defects in the D800;

e.     Whether Defendant violated consumer protection statutes of New York and other states as described in more detail below;

f.     Whether Defendant was unjustly enriched by refusing to replace the defective D800 with a properly functioning camera, at no charge to consumers;

g.     Whether the Class is entitled to notice as to the defects;

h.     Whether members of the Class have suffered damages;

i.     Whether Defendant has breached the express or implied warranties for the D800, or the provisions of the Magnuson-Moss Warranty Act, when it is used for its intended purpose;

j.     Defendant's vicarious liability for the actions of its employees;

k.     The extent of damages caused by Defendant's willful violations; and

l.     The type of damages and restitution that should be granted to Plaintiff and members of the putative Class.

13.     Plaintiff's claims are typical of the Class.  As with members of the Class, Plaintiff purchased a D800 camera and experienced repeated problems with the automatic focus system. Plaintiff's interests coincide with, and are not antagonistic to, those of the other class members.

14.     In accordance with Fed. R. Civ. P. 23(4), Plaintiff will fairly and adequately represent and protect the interests of the Class.

15.     Plaintiff has retained counsel experienced in the prosecution of class action litigation and counsel will adequately represent the interests of the Class.

16.     Plaintiff and her counsel are aware of no conflicts of interest between Plaintiff

and absent Class members or otherwise;

17.     Plaintiff has or can acquire adequate financial resources to assure that the interests of the Class will not be harmed; and

18.     Plaintiff is knowledgeable concerning the subject matter of this action and will assist counsel to vigorously prosecute this litigation.

19.     In accordance with Fed. R. Civ. P. 23(b), *et seq*, the class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of individual citizens of the United States to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would require. The exact number of United States consumers who purchased the D800 can be obtained through discovery and from Defendant's business records.

20.     Class action treatment will also permit the adjudication of relatively small claims by certain class members, who could not individually afford to litigate a complex claim against a large corporate defendant. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical, as the cost of litigation is almost certain to exceed any recovery they would obtain.

21.     Plaintiff is unaware of any difficulty likely to be encountered in the management of this case that would preclude its maintenance as a class action.

## STATEMENT OF GENERAL FACTS

22.     Nikon is a worldwide corporation with approximately 24,000 employees and corporate headquarters in Tokyo, Japan. According to its 2014 annual report, is has been a "pioneer in optical technology" since 1917.

23.     Nikon reported global net income of $454 million in 2014 on $9.53 billion in net sales, with 22.7 percent of its sales taking place in the United States. The only market with a larger share of Nikon sales in 2014 was Europe, with a 25.9 percent share of sales.

24.     Nikon released the D800 in the United States thorough its wholly owned subsidiary Nikon Inc. in March 2012 with a retail price of $3,000.

25.     In a corporate press release dated February 7, 2012 titled "A new Nikon FX-format digital SLR camera with the world's highest effective pixel count–36.3-million pixels–for noteworthy definition and image quality," Nikon touted the AF capability of its new D800: "A 51-point AF system for improved subject acquisition and focus performance under dim lighting. In addition, 11 focus points (five at center with an addition three to each side) are fully functional when lenses with a maximum aperture of f/8 are used."

26.     According to a brochure published on Nikon's Web site[1], the D800 offered numerous advancements over other cameras available in the United States, including "detailed scene analysis with constant face detection for more accurate auto control." More specifically, the following passage from the D800 sales brochures states the following:

> With the D800 and its more precise information and subject recognition advancements, expect big steps forward for both AF-area modes when taking high-quality still images. In auto-area AF, the camera can genuinely detect human faces and focuses on them immediately — useful when faces are a priority and there's no time to choose focus points. When using 3D-tracking, the sensor's fine resolution combines with a specifically optimized AF algorithm to realize unprecedented subject tracking precision, recognizing detailed patterns to keep your subject in sharp focus.

---

[1] Parts of the brochure are still available at http://imaging.nikon.com/lineup/dslr/d800/features01.htm

27.     Nikon also warranted that the D800 and its 51-point focusing system offered "… (i)mproved AF coverage & improved AF sensitivity," and that the "… selected AF point and the surrounding points keep your subject in sharp focus even if it briefly leaves the selected points."

28.     Nikon presented the D800 as an attractive purchase choice for high-end photography hobbyists and professionals alike, not only due to its supposedly superior auto-focusing system, but because it could take 36.3 megapixel images, the largest digital image size for a single-lens reflex camera at the time, and its capability to record high-definition video.

29.     Soon after the D800 hit the market, problems with the auto-focusing system started to surface. The following are just a few representative examples:

a.     In late 2012, Michael Wollburg, a Nikon technician and customer support manager in Germany, told a journalist in an interview that the company acknowledged and understood the AF problem, but that the repair solution was tedious. "The root cause is a misalignment of the AF module when mounted, outside of Nikon's own production tolerances."[2] The interview also describes the difficulty of repairing the D800, as follows: "The fixing procedure for Nikon is a tedious one. It includes writing individual calibration values into the firmware. For larger deviations, the AF module will first mechanically be re-aligned. This may actually include the AF auxiliary mirror in some cases…. There is some dispute about the eventual success of the service measures from Nikon so far. Not only are there differences between countries and early attempts have faced difficulties and a lack of a clear procedure. But there is additional uncertainty about what to reasonably expect …. Therefore, the eventual success of the service measures from Nikon must be gauged relative to what is feasible technically."

---

[2] Falk Lumo, *LumoLabs Interview with Michael Wollburg*, Manager Customer Support Nikon GmbH, available at http://blog.falklumo.com/2012/09/photokina-2012-nikon-talks-about-d800s.html#more.

b.      In Sept. 2012, an online forum hosted by B&H Photo published the following comment from a consumer identified as Frustrated Nikon User: "By now many people have reported on the internet problems with Nikon D800 and D800E autofocus. It is frequently reported that autofocus points on the left side do not work well…. On the point of Nikon repairing the cameras, most of the online posts I have read indicate that Nikon service centers are not able to fix the problem at this time."

c.      In Nov. 2013, another consumer named Fine Art John posted the following comment at the same online forum: "Been using Nikon products for 20 years as a professional Photographer. The D800 was supposed to be my go to camera. The D800 is known for having Auto focus problems…. Nikon service would not fix the autofocus problem…. Nikon lost a important customer and everyone should think twice now about purchasing Nikon products!"

30.      Despite these and other well-publicized problems with the D800 and its auto-focusing system, Nikon refused to allow members of the proposed Class to return the D800 for a refund or exchange it for a different model. Instead, on information and belief, Nikon simply removed the D800 from the market in the United States, replaced it with the D800E, and then later in June 2014 replaced it with another model called the D810.

31.      The newer D810 is extremely similar to the defective D800, with the notable exception of the auto-focusing system. In a press release announcing the D810, Nikon said it is building upon the success of the D800, while making the following changes: "… the precision of the 51-point AF system has been increased with adoption of the Advanced Multi-CAM 3500FX autofocus sensor module and improvements to the focusing algorithm, ensuring exact autofocus acquisition on the intended portion of a still subject."

**STATEMENT OF FACTS PARTICULAR TO PLAINTIFF**

32.     Plaintiff, Shane Wynn, is a professional photographer based in Akron, Ohio. She has twenty years of experience in the photography industry, and regularly shoots magazine covers, weddings, portraits, restaurants, and both private and corporate events.

33.     On June 26, 2012, Plaintiff purchased a Nikon D800, Serial No. 3020821, at Dodd Camera in Akron, Ohio, for $3,299.98. Plaintiff used the D800 for routine photography assignments, for the purposes for which it was intended to be used.

34.     After experiencing numerous problems with the AF system, Plaintiff attempted to resolve the defect by paying to repair her lenses, based upon the reasonable belief that the lenses — and not the brand-new camera — were to blame.

35.     After initial attempts to resolve the AF problem failed, Plaintiff sent her D800 to Defendant for repairs on Sept. 26, 2013. The camera was repaired and returned, but the AF problem soon returned.

36.     On May 15, 2014, Plaintiff again sent her D800 to Defendant for repairs, but upon return of the camera to Plaintiff the AF defects still were not resolved.

37.     On September 19, 2014, after Plaintiff attempted to resolve the D800 defect issues yet again, a Nikon technician told Plaintiff in writing that the camera was no longer under warranty and there was "not enough time" to make further repairs.

38.     Plaintiff did not experience similar problems with other Nikon cameras, despite relying on Nikon equipment almost exclusively for her photography business over the last twenty years.

39.     Plaintiff had no way of knowing about the defects with the AF system of the

9

D800 at the time of her purchase, and she had no reason to believe that Nikon would fail to resolve the problem, despite the fact that Plaintiff diligently and in good faith attempted to resolve the AF system problems before resorting to litigation.

40.     Nikon's warranty policy states that any "Nikon Digital Imaging Product is warranted by Nikon Inc. to be free from defects in material and workmanship for one (1) year from the date of purchase. During this period if this product is found to be defective in material or workmanship, Nikon Inc., or one of its authorized service facilities will at its option, either repair or replace this product without charge…"

41.     The D800 camera purchased by Plaintiff was defective when it was delivered to her, but she had no way of knowing that the AF system was the source of the problems because Nikon concealed this information from Plaintiff and consumers in general. Therefore, it was defective immediately upon purchase when it left the exclusive control of Defendant, and Defendant breached its express and implied warranties for Plaintiff and all members of the proposed Class.

42.     Plaintiff and members of the proposed Class have a reasonable expectation of a camera that operates and functions as represented and warranted. Because of the above deceptions and violations, which also are described in further detail below, Plaintiff and members of the proposed Class are entitled to relief.

## FACTS REGARDING DAMAGES

43.     Defendant caused harm to consumers who bought the D800 in the United States, including financial losses, loss of value, and other harms due to the following:

a.      Plaintiff and members of the Class paid approximately $3,000 excluding sales tax for the D800 following its U.S. launch in March 2012.

b.      Plaintiff and members of the Class purchased the D800 with the intention of taking high-quality full frame photographs, including images using Nikon's Multi-CAM 3500 FX automatic focus feature with 51 distinct focusing points.

c.      Plaintiff and members of the Class experienced numerous and pervasive problems with the auto-focusing feature of the D800, with one of the most common problems being a failure of the focusing points on the left side of the viewfinder to properly focus.

d.      Plaintiff and members of the Class attempted to resolve the auto-focusing problems with Nikon, without success.

e.      If the Nikon D800 had performed as warranted, Plaintiff and members of the Class would not have suffered the damage and economic loss described herein.

f.      If the autofocusing problems with the Nikon D800 had been disclosed, Plaintiff and members of the Class would not have purchased the camera and/or would have paid substantially less for it.

g.      Plaintiff and members of the Class have been denied the full value of their D800 cameras due to extensive amounts of time re-shooting and editing images, sending the D800 to Nikon facilities for repair, paying for shipping and postage,

corresponding with Defendant about autofocusing problems, testing and retesting the camera with a variety of lenses in different situations, and otherwise attempting to resolve the frustrating defects related to the auto-focusing feature.

h.     Plaintiff and members of the Class have suffered other losses, in part due to the fact that a large percentage of D800 owners are professional photographers, who stake their reputations to the quality of the images they produce, including in situations where they have only a short window of time to capture an image or a scene before it disappears forever. Plaintiffs have therefore experienced a loss of reputation and revenue from missed assignments, inferior work product, and time spent addressing the auto-focusing problems which otherwise would be spent on other tasks.

i.     Plaintiff and members of the Class have suffered diminished value for the D800, which is no longer sold by Nikon despite it being launched barely two years ago. Reputable camera dealers and distributors in the United States have likewise removed the D800 from their shelves and Web sites, and the few that continue to sell the D800 have lowered the sales price to approximately $2,000 or less.[3]

44.     By reason of the above-described general facts, Plaintiff and members of the Class have suffered damages due to the misrepresentations of Defendant, and Defendant's refusal to remedy the autofocusing defects.

---

[3] Nikon still advertises the D800 on its Web site, along with the promise "every photo will astound" and "every video will dazzle." The list price for the camera body only remains $2,995.95. However, a link offered by Defendant to places to buy the D800 leads consumers to a list of 13 retailers, all of which state that the D800 is "out of stock."

## COUNT I
## (BREACH OF EXPRESS WARRANTY)

45.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

46.     Defendant was and is at all relevant times a "merchant" within the meaning of the Uniform Commercial Code ("UCC").

47.     Defendant manufactured, distributed, and marketed the D800 cameras, which are "goods" within the meaning of the UCC and other applicable commercial codes.

48.     In connection with the sale of the D800, Defendant made the following express warranties to consumers, as defined under the UCC, and other applicable state commercial codes, which offer objective descriptions of camera utility, and inform the consumer of the specific functions the camera was designed to perform, including the AF system, which as noted above, was warranted to offer "… (i)mproved AF coverage & improved AF sensitivity," and that the "… selected AF point and the surrounding points keep your subject in sharp focus even if it briefly leaves the selected points."

49.     The express warranties for the D800 camera proclaiming advanced technology, construction, and picture quality, as well as a guarantee to repair or replace any defective product, were a part of the basis of the bargain for Plaintiff and Class members in purchasing the D800.

50.     The D800 cameras were not altered by Plaintiff of members of the proposed Class.

51.     The D800 cameras were defective when they left the exclusive control of Defendant.

52.     Defendant breached the above express warranties by failing to create a permanent

solution to adequately repair the D800 and its AF system, and by failing to satisfy its obligations under the express warranty.

53.     If it attempts to limit the remedies to which Plaintiff and members of the proposed Class are entitled, or the period within which to bring claims, Defendant is estopped by its direct misrepresentations to consumers regarding the nature of the AF system defect. In addition, and in the alternative, any such limitation is unconscionable and void based on Defendant's knowledge of the defect at the time of sale, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture, Defendant knew or should have known that the D800 was at all times defective and that a permanent repair was not possible, including at the time Plaintiff and Class members purchased the product.

54.     As a direct and proximate cause of Defendant's breach of express warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the camera as warranted and the camera as actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $75,000.

**COUNT II**
**(BREACH OF IMPLIED WARRANTY OF FITNESS**
**FOR A PARTICULAR PURPOSE)**

55.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

56.     Defendant marketed, distributed, and sold the D800 with implied warranties that it was fit for the particular purpose of taking superior, FX-quality pictures unmarred by AF system problems.

57.     Specifically, but without limitation, Defendant claimed the D800 "can genuinely detect human faces and focuses on them **immediately** — useful when faces are a priority and

**there's no time to choose focus points**" (emphasis added).

58.    At the time the D800 was sold, Defendant knew, or should have known, that Plaintiff and Class members would rely on Defendant's skill and judgment regarding the efficacy and quality of the D800, including its supposedly improved AF system.

59.    In reliance on Defendant's skill and judgment and the implied warranties of fitness for a particular purpose, Plaintiff and Class Members purchased the D800 for the purpose of taking clear, superior, FX-quality photographs.

60.    Defendant received timely notice of its breaches from Plaintiff and members of the Class via telephone, its website, the general photography industry, and other sources.

61.    Despite being notified, Defendant has not provided Plaintiff and members of the Class a product that conforms to the qualities and characteristics that Defendant warranted when it sold the D800, and has failed to fully reimburse, rectify, or repair the defective D800.

62.    The D800 was manufactured or designed defectively, and delivered to consumers as such. Therefore, it was defective immediately upon purchase when it left the exclusive control of Defendant, and Defendant breached the implied warranty of fitness for a particular purpose to Plaintiff and all Class members.

63.    Any language used by Defendant to attempt to limit the availability of implied warranties, remedies, or the period within which to bring claims, is barred by its direct misrepresentations to consumers regarding the nature of the defect.

64.    In addition, and in the alternative, any such limitation is unconscionable and void because of Defendant's knowledge of the defect at the time of sale, it fails to conform to the requirements limiting remedies under applicable law, and because any such limitation creates a warranty that fails of its essential purpose. By virtue of the defective design or manufacture,

Defendant knew or should have known that the D800 was at all times defective, including at the time Plaintiff and Class members purchased the product.

65.     As a direct and proximate cause of Defendant's breach of implied warranties, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the camera as warranted and the camera as actually sold, as well as consequential and incidental damages, in the aggregate, in excess of $75,000

**COUNT III**
**(VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT)**

66.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

67.     The Magnuson-Moss Consumer Products Warranties Act, 15 U.S.C. §§ 2301, *et seq.*, provides a private right of action by purchasers of consumer products against manufacturers or retailers who fail to comply with the terms of an express or implied warranty. See 15 U.S.C. § 2310(d)(1). As demonstrated herein, Defendant failed to comply with the terms of its express and implied warranties with regard to the defective Nikon D800 camera.

68.     The Nikon D800 camera is a "consumer product" as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act.

69.     Plaintiff and members of the proposed Class are "consumers," as that term is defined in § 2301(3) of the Magnuson-Moss Warranty Act.

70.     Defendant is a "warrantor," as that term is defined in § 2301(5) of the Magnuson-Moss Warranty Act. Defendant offered express and implied warranties on its products that put Defendant in privity with Plaintiff and the Class.

71.     Defendant's written affirmations of fact, promises and/or descriptions, as alleged

herein, are "written warranties" within the meaning of § 2301(6) of the Magnuson-Moss Warranty Act.

72.     Defendant's "implied warranties" are within the meaning of § 2301(7) of the Act.

73.     The Plaintiff and members of the Class notified Defendant of its breach of express warranties prior to the filing of this Complaint, including through attempting to obtain repair, replacement, or reimbursement for the defect from Defendant.

74.     Defendant was given a reasonable opportunity to cure its failure to comply with express and implied warranties. However, Defendant's "cures" were inadequate and did not fully address the defect and injuries complained of herein.

75.     As a direct and proximate result of Defendant's breaches of the Magnuson- Moss Warranty Act, Plaintiff and Class members have sustained damages, an economic loss equal to the total purchase price of these unfit products, or the difference in value between the camera as warranted and the camera as actually sold, as well as consequential and incidental damages.

**COUNT IV**
**Violation of NYS GBL 349 and 350 and / or**
**The Various Analogous State Consumer Laws of the Other States**

76.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

77.     Because Defendant is a New York corporation, application of New York's Deceptive Practice Act

78.     Defendant's sale of the defective D800 to Plaintiff and the Class as described herein constitute the "conduct of any trade or commerce" within the meaning of N.Y. Gen. Bus. Law §§ 349(a) and 350.

79.     Defendant's advertisement of the D800 as improved in its press releases, on its

websites and in its advertising to Plaintiff and the Class as described herein constitute the "false advertising in the conduct of any business, trade or commerce" within the meaning of NYS GBL 350.

80.     Defendant in the normal course of its business, manufactured, designed, packaged, advertised and sold this defective camera to Plaintiff and the Class.

81.      Defendant affirmatively misrepresented the ability and usefulness of the D800.

82.     Plaintiff reasonably relied to her detriment on the false promises made by Defendant, as did the putative Class she seeks to represent.

83.     The foregoing acts and conduct of Defendant are deceptive in that Defendant represented to the consumer class that its Products packaged with a speedometer icon incorrectly stating their "real world" data transfer speed could perform data transfer operations at speeds they physically could not.

84.     By falsely advertising, marketing and selling the D800 as they did, Defendant violated New York and other state consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes, and by these deceptive actions, Plaintiff and the class were harmed.

85.     In the alternative to the uniform application of GBL 349 to the putative Class, all Class members are consumers, purchasers, or other persons entitled to the protection of the consumer protection laws of the state in which they reside.

86.     The consumer protection law of the state in which each Class member resides and purchased a D800 declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendant violated the consumer protection laws of all states in the same manner as described above.

87.    All of the consumer protection states have enacted statutes designed to protect consumers against unfair, deceptive, fraudulent, and unconscionable trade and business practices and false advertising that further allow consumers to bring private or class actions.[4]

88.    By reason of such violations and pursuant to N.Y. Gen. Bus. Law § 349(a) and other consumer protection statutes, Plaintiff and members of the proposed Class are entitled to recover all of the monies paid for the defective D800; any and all statutory damages; to be compensated for the cost of repairs to the AF system arising out of the use of the product; and to recover any and all consequential damages recoverable under the law including, but not limited to, past and future lost wages, the cost of shipping and postage, loss of reputation, and other losses.

89.    In connection with the sale of the D800 to both Plaintiff and members of the proposed Class, Defendant, through its employees, agents and representatives, violated consumer protection statutes by failing to disclose the AF system defects with the D800 camera and by

---

[4] These statutes include, but are not limited to, the following:  Alabama: Ala. Code § 8-19-5(5), (7), (27); Alaska: Alask. Stat. § 45.50.471(b)(4), (6), (11), (12); Arizona: Ariz. Rev. Stat. Ann. § 44-1522; Arkansas: Ark. Code Ann. § 4-88-107(a)(1), (10); § 4-88-108; Colorado: Colo. Rev. Stat. Ann. § 6-1-105(e); Connecticut: Conn. Gen. State. Ann. § 42-110b; Delaware: 6 Del. Code § 2513(a); District of Columbia: D.C. Code § 28-3904(e); Florida: Fla. Stat. § 501.204(1); Georgia: Ga. Code Ann. § 10-1-370; § 10-1-393(a); Hawaii: Haw. Rev. Stat. §§ 480-2(a); 481A-3; Idaho: Idaho Code § 48-603(5), (7), (17), (18); Illinois: 815 ILCS 505/2; 815 ILCS 510/2(a)(5), (a)(7), (a)(12); Indiana: Ind. Code § 24-5-0.5-3(a)(1), (a)(2); Iowa: Iowa Code § 714.16; Kansas: Kan. Stat. Ann. § 50-626(a); 626(b)(1)(A), (D), (F), (G); 626(b)(2), (3); Kentucky: KRS § 367.170; Louisiana: La. R. S. § 51:1405.A; Maine: Me. Rev. Stat. Ann. tit.5, § 207; Maryland: Md. Code Ann. Com. Law § 13-301(1); (2)(i); (2)(iv); (3); (9)(i); Massachusetts: Mass. Gen. Laws Ann., Ch. 93A, §§ 2, 9; Mich. Comp. Laws Ann. §§ 445.903 (3)(1)(c), (e), (s), (z), et. seq.; Minnesota: Minn. Stat. §§ 325F.69; 325D.13; 325D.44; 8.31, subd. 3a; Mississippi: Miss. Code Ann. § 75-24-5(2)(e), (g); Montana: Mont. Code. Ann. § 30-14-10; Nebraska: Neb. Rev. Stat. Ann § 59-1609; Id. at § 87-303(a); Nevada: Nev. Rev. Stat. §§ 598.0903 through 598.0999; Nev. Rev. Stat. § 41.600; New Hampshire: N.H. Rev. Stat. Ann. §§ 358-A:2; 358-A:2(V); 358-A:2(VII); New Jersey: N.J. Stat. Ann. § 56:8-2; New Mexico: N.M. Stat. Ann. § 57-12-3 and § 57-12-2 (5), (14); New York: N.Y. G.B.L. § 349(a); North Carolina: NC General Statutes §§ 75-1 *et seq.*; North Dakota: N.D.C.C. §§ 51-12-01, 51-15-02; Ohio: Ohio Rev. Code § 1345.02 (A), (B)(1)-(B)(2)ii.; Oklahoma: Okla. Stat. Ann. tit. 15, § 753 (2), (3), (5), (20), tit. 78, § 53; Oregon: Or. Rev. Stat. § 646.608(1)(e), (g), (t), (u); § 646.608(2); Pennsylvania: 73 Pa. Stat. Ann. § 201-3; § 201-2(4)(ii); (v); (vii); (xxi); Rhode Island: R.I. Gen. Laws § 6-13.1-2. 6-13.1-1(5)(E), (L), (M), (N); South Carolina: S.C. Code § 39-5-20(a); South Dakota: South Dakota Codified Laws § 37-24-6(1); Tennessee: Tenn. Code §§ 47-18-104(a), (b)(5), (b)(7), (b)(21), (b)(27); Texas: Tex. Bus. & Com. Code § 17.46(b)(2), (b)(3), (b)(5), (b)(7), (b)(24); Utah: § 13-11-4(1), (4)(2)(a), (4)(2)(b), (4)(2)(e), (4)(2)(i); Vermont: 9 Vt. Stat. § 2453(a); Virginia: Va. Code § 59.1-200(A)(2), (3), (5), (14); Va. Code § 59.1-683 with § 18.2-216; Washington: Wash. Rev. Code § 19.86.020; West Virginia: W.Va. Code § 46A-6-102(7)(B), (C), (E), (G), (L), (M); § 46A-6-104; Wisconsin: Wisc. Stat. § 100.18(1); Wyoming: Wyo. Stat. § 40-12-105(a)(i), (ii), (iii), (xv).

making affirmative false statements about the true abilities of the camera.

90.     Plaintiff and members of the proposed Class are consumers within the meaning of those laws.

**91.**     As a direct and proximate result of Defendant's unfair and/or deceptive acts or practices, Plaintiff and Class were damaged.

**Count V**
**(FRAUD)**

92.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

93.     Defendant has engaged in a common scheme of fraud, through statements and omissions through which it intentionally deceived consumers.

94.      Defendant made false, affirmative, specific statements in its press releases, advertisements and on its web site about the abilities of the AF system of the D800, including (but not limited to) the February 2012 press release, which listed the D800's specs and stated that the D800 had a "51-point AF system for improved subject acquisition and focus performance under dim lighting. In addition, 11 focus points (five at center with an addition three to each side) are fully functional when lenses with a maximum aperture of f/8 are used" (emphasis added).

95.     This statement was false when made because the AF system was not "improved" in that it did not function correctly and the AF system was not "fully functional."

96.     Similarly, while Defendant knew or should have known of the AF problem, there is no corporate statement about it.

97.     Defendant knew of and failed to disclose defects in the AF system of the D800 camera, during a period when Plaintiff could have legal recourse against Defendant, thereby

damaging Plaintiff and members of the proposed Class.

98.   Defendant on its corporate website posted claims touting the abilities of AF including "detailed scene analysis with constant face detection for more accurate auto control" (emphasis added).

99.   This statement was false when made because the AF system was not able to give more "accurate auto control" than other models: if fact, this feature was severely limited by the defect.

100.   Defendant perpetrated the common scheme of fraud complained of herein by omitting, or failing to disclose to Plaintiff and Class, that the AF system in the D800 camera was defective and that in many cases it could not be repaired.

101.   Plaintiff and the Class are presumed to have justifiably relied on Defendant's omissions and failures to disclose.

102.   The claims made by Defendant to Plaintiff and the Class are material facts because any reasonable person would have considered those facts to be important in deciding whether or not to buy the D800.

103.   Had Plaintiff and the Class known of the true AF abilities and defects of the D800, they would not have purchased Defendant's camera, or not at the premium price they paid.

104.   Because of the defect, a "second-hand" D800 sells for many hundreds of dollars less than paid by Plaintiff and the Class.

105.   As a direct and proximate result of Defendant's common scheme of fraud, Plaintiff and Class were damaged.

## COUNT VI
## (UNJUST ENRICHMENT)

106.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

107.     To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of their wrongful conduct alleged herein.

108.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant approximately $3,000 for a camera with a focusing defect that rendered the camera's actual value far less than the retail price.

109.     Defendant knowingly, unfairly, deceptively, unjustly and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

110.     Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained profits received by Defendant as a result of their inequitable conduct as more fully stated herein.

## COUNT VII
## (ALTERNATIVE RELIEF – QUASI CONTRACT)

111.     Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

112.     Defendant sold D800 cameras that were designed or constructed so poorly that they produced pictures with subjects that were not in focus — a basic element of photography.

113.     Defendant sold these cameras to consumers, and knew, or should have known that the cameras were defective.

114.     There is a quasi-contract between Plaintiff and Defendant.

115.     Defendant expressly offered its D800 camera for sale as a camera that would take clear, superior, FX-quality photographs. Plaintiff accepted these offers and paid substantial sums

of money, often in excess of $3,000, to purchase the D800.

116.   Defendant is a "for-profit" business.

117.   Plaintiff's purchase of Defendant's products enriched Defendant.

118.   Plaintiff performed her obligations under the contract by paying for the product and using it as it was intended to be used.

119.   Defendant breached the contract.

120.   Defendant did not provide a D800 that took superior, high quality photographs. To the contrary, pictures taken with the D800 contained subjects that were not in focus due to the defective AF system.

121.   Under the circumstances described in this Complaint, it would be inequitable and unjust for Defendant to retain the benefits conferred upon it by Plaintiff and the Class.

122.   Defendant should return any ill-gotten gains to Plaintiff and the Class. Plaintiff and the Class are entitled to receive equitable relief in the form of appropriate restitution and disgorgement of all wrongfully obtained earnings, profits, compensation and benefits obtained by Defendant.

## JURY DEMAND

Plaintiff hereby respectfully requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and the members of the proposed Class, demands judgment as follows:

A.   A determination that this action is a proper class action for compensatory, consequential, and statutory damages as alleged herein;

B.    An order appointing Shane Wynn as Class Representative for the proposed class, and the undersigned attorneys as class counsel for the proposed class;

C.      For pre-judgment interest from the date of filing this suit;

D.      For reasonable attorney's fees and expenses;

E.      For exemplary and punitive damages;

F.      For all costs of this proceeding; and

G.      Such other and further relief as this Court finds just and proper under the circumstances.

Dated: October 24, 2014

Respectfully submitted,

**LAW OFFICES OF PAUL C. WHALEN, P.C.**

By: _____
Paul C. Whalen (PW 1300)
768 Plandome Road
Manhasset, NY 11030
Telephone: (516) 627-5610


**JONES WARD PLC**
Jasper D. Ward IV
Alex C. Davis
*Pro Hac Vice Pending*
Marion E. Taylor Building
312 South Fourth Street, Sixth Floor
Louisville, Kentucky 40202
P: (502) 882- 6000
F: (502) 587-2007

Attorneys for Plaintiff and the Class